IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PAULA MARY BOKISA,**                    Case No. 1:16 CV 83

      Plaintiff,                              Judge Benita Y. Pearson

      v.                                    Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                            REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Paula Mary Bokisa ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to a prior magistrate judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1) on January 13, 2016, and reassigned to the undersigned on October 3, 2016. Following review, the undersigned recommends the Court affirm the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits in February 2012, alleging disability as of February 22, 2012. (Tr. 193-94). The claim was denied initially (Tr. 145-48) and on reconsideration (Tr. 153-59). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at an administrative hearing on August 1, 2013. (Tr. 38-112). Following the hearing, an administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff not disabled. (Tr. 18-37). The Appeals Council denied Plaintiff's request for review, making the hearing

decision the final decision of the Commissioner. (Tr. 1-6); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on January 13, 2016. (Doc.1).

**FACTUAL BACKGROUND**

<u>Personal and Vocational Background</u>

Plaintiff was born on June 6, 1968, and was 43 years old at the time of her alleged onset date of disability. (Tr. 113). She has a high school education and some college coursework. (Tr. 50). The VE characterized her past work experience as accounting clerk, customer service clerk, and floral designer. (Tr. 94-98).

<u>Relevant Medical Evidence</u>

*Physical Impairments*

Plaintiff underwent a cervical spine fusion in April 2009. (Tr. 276). After surgery, Plaintiff continued to complain of lower back pain, but x-rays of the cervical spine showed "good position and alignment of the grafts." *Id.* Her neck was "well healed"; numbness and pain in her left arm had disappeared; she had intact thoracic spine range of motion; mildly limited lumbosacral spine range of motion; a straight leg raise was 90 degrees bilaterally; she had a negative Patrick test; and intact range of motion in both hips, knees, ankles, and toes. *Id.*

In May 2009, Plaintiff was "doing well" with  physical therapy (Tr. 274), and she did not report any radiating pain in June 2009 (Tr. 272). Plaintiff returned to work by August 2009. (Tr. 270). Her surgeon, Dr. William Bohl, M.D., recommended an elevated seat  or seat cushion for pain in her shoulder caused by sitting in a low seat at work. *Id.*

On March 19, 2012, Plaintiff underwent a colectomy (Tr. 386-87, 587-88) and a biopsy revealed diverticulitis. (Tr. 382). The colectomy was repaired on March 27, 2012. (Tr. 383-84). During a follow-up appointment, Plaintiff was "[n]egative for abdominal discomfort besides

crampy incisional pain." (Tr. 431). A physical examination revealed normal extremities and intact muscular strength. *Id.* In May 2012, Plaintiff reported that she "[felt] better than before," with improving appetite and no pain, but some frequency issues. (Tr. 393).

In an undated report, Dr. Sherri Carney noted she treated Plaintiff since 2005 and her most recent visit was on July 10, 2012. (Tr. 354-55). Dr. Carney noted Plaintiff's diagnoses included: severe cervical degenerative disc disease; recurrent syncope, left arm numbness and weakness; colostomy due to ischemic colorectal necrosis; chronic anticoagulation due to mesenteric vein thromboses; primary biliary cirrhosis; gastroparesis; obstructive sleep apnea; depression/general anxiety disorder; osteoarthritis in multiple joints; lumbar degenerative disc disease with sciatica; and hypothyroidism. (Tr. 354).

In August 2012, Plaintiff was "doing well" and denied any abdominal, back, or groin pain. (Tr. 472). On August 23, 2012, Plaintiff reported no pain and no difficulty performing her daily living activities. (Tr. 479). However, the same day (in a different treatment note), she reported experiencing intermittent pain of nine out of ten in her right foot. (Tr. 480, 623).

Plaintiff was hospitalized from August 27, 2012, to September 2, 2012, due to "[c]olostomy, status post takedown of ischemic colon and colorectal anastomosis after sigmoid colectomy". (Tr. 468).

In September 2012, Plaintiff had an appointment for chronic right foot pain she reported experiencing for 20 years, and low back pain of five out of ten. (Tr. 516). Two weeks prior to the appointment, she developed new, additional pain in the toes of her right foot. *Id.* In October 2012, Plaintiff denied any pain. (Tr. 525). On November 9, 2012, Plaintiff had "[l]oop ileostomy closure" surgery (Tr. 684-85), and the following month she developed an upper midline ventral hernia, but was "[d]oing well". (Tr. 686-87).

In February 2013, Plaintiff complained of ten out of ten abdominal pain that had lasted four months. (Tr. 692). A physical examination revealed a limited range of motion in her back and full range of motion in all extremities. (Tr. 557). Plaintiff had no loss of sensation, no atrophy or tone abnormalities, and normal gait. *Id.*

In March 2013, Plaintiff reported pain of six out of ten, and denied any problems completing her daily activities or controlling her bowel or bladder. (Tr. 554, 719). She stated her pain was four out of ten on her "best" day and ten out of ten on her "worst" day. (Tr. 554). Plaintiff stated that medication and lying down mitigated the pain. *Id.* An imaging study did not show any abnormalities. (Tr. 555). Plaintiff denied arm or leg weakness, numbness, or tingling. (Tr. 554). On March 8, 2013, she underwent surgery to repair the ventral hernia, and remained in the hospital until March 13. (Tr. 709).

*Mental Impairments*

Plaintiff reported a history of being anxious and depressed. (Tr. 455). In January 2012, she reported to Dr. Carney that Effexor was "working well" for her depression and anxiety. (Tr. 452).

Later that year, in December 2012, she felt "much better" on  Adderall; she was more patient and able to "get[] things done". (Tr. 772). In January 2013, Plaintiff's doctor noted Adderall was "still making a tremendous difference in quality of life".  (Tr. 771).

Opinion Evidence

*Treating Physician*

In an undated report, in which Dr. Carney noted she last saw Plaintiff on July 10, 2012, she determined Plaintiff could not lift more than five pounds, perform repetitive or quick movements, or "overreach" because of arm weakness and numbness; and that Plaintiff had a

history of syncopal episodes. (Tr. 355). Dr. Carney noted Plaintiff became uncomfortable after sitting for more than ten minutes due to chronic rectal and musculoskeletal pain; and she could not stand for more than five minutes. *Id.* Dr. Carney stated Plaintiff could not stoop due to loss of balance and knee/hip pain; could only bend slowly and carefully, but not repetitively; and had to avoid extreme environments due to extreme asthma and allergies. *Id.*

In a second undated report, in which Dr. Carney noted she last saw Plaintiff on December 19, 2012, she noted Plaintiff was compliant with treatment and indicated Plaintiff's "bowel urgency/incontinence/diarrhea in and of itself limits her capacity to work"; "recurrent dizziness/syncope due to cervical disk disease – affect lifting"; "numbness/weakness in hands affect grasp"; "ADD/panic attacks/major depression – affect concentration". (Tr. 379-80).

*Consultative Examiner*

In July 2012, Paul Deardorff, Ph.D., evaluated Plaintiff. (Tr. 454-61). Dr. Deardorff determined Plaintiff had no difficulty in the areas of understanding, remembering, and carrying out instructions; maintaining attention and concentration, maintaining persistence and pace, and performing both simple and multi-step tasks. (Tr. 460). With regard to the areas of responding appropriately to supervision and to coworkers in a work setting; and responding appropriately to work pressures in a work setting; Dr. Deardorff noted Plaintiff appeared to be anxious and depressed, but "interacted appropriately with the examiner." (Tr. 460-61). Dr. Deardorff noted Plaintiff's general level of intelligence appeared to fall in the bright-average range. (Tr. 458).

*State Agency Reviewers*

In July 2012, state agency reviewer Rannie Amiri, M.D., determined Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; was limited in the left

upper extremity with regard to pushing and/or pulling; could occasionally climb ramps/stairs and crawl; frequently stoop; no restrictions with balancing, kneeling, or crouching; never climb ladders/ropes/scaffolds; was limited in reaching overhead and handling on the left side; and should avoid all exposure to hazards. (Tr. 120-22). In December 2012, a second state agency reviewer Leon Hughes, M.D., confirmed these findings. (Tr. 136-39).

Also in July 2012, state agency reviewer Janet Souder, Psy.D., made the following determinations: (1) "[claimant] is capable of carrying simple to moderately complex 1-4 step instructions in a low pressured work environment without strict pace/productivity expectations. Impairments in [attention/concentration] limit her ability to maintain close focus over extended periods of time due to anxiety and depression"; (2) "[a]ble to maintain conventional interpersonal relationships in spite of symptoms as evidenced by presentation at FO, psych CE and report of interpersonal contacts with friends and family"; and (3) "[claimant] is capable of adapting to occasional, routine changes within the work day. Anxiety and depression moderately limit her adaptation and coping abilities." (Tr. 122-24). In December 2012, a second state agency reviewer, Katherine Fernandez, Psy.D., confirmed these determinations. (Tr. 139-40).

<u>Hearing Testimony</u>

At the hearing, Plaintiff testified she "moved in to care for [her] father four years ago", who she classified as "disabled" due to strokes and heart problems but noted it was "[e]xtremely difficult" to do so. (Tr. 47, 89). She washed dishes and cooked, but would need to sit down to take breaks. (Tr. 84). Plaintiff also did laundry and cleaned the house, but then would "be down for two days". *Id.* She also performed "slight yardwork", grocery shopped, and took care of two dogs. (Tr. 85-87). Plaintiff climbed the stairs at the two-story home ten to twelve times a day to

go to the bathroom, which was located upstairs. (Tr. 47-48). Plaintiff drove approximately twice a week, but reported numbness in her arms and shooting pain and cramping in her right leg while doing so. (Tr. 49-50). Plaintiff took the "Rapid Transit" to get to the hearing. (Tr. 50). While discussing her work history, Plaintiff stated: "while I was in the hospital having one of my surgeries, I got a phone call from the president of the company, and they decided to close us down." (Tr. 52).

Plaintiff stated on a typical day her neck pain was "10-plus every day". (Tr. 57). She took medication for fibromyalgia, but no prescription pain medication due to a past dependency on "narcotic[s] or opiate[s]". (Tr. 58-59). Instead, she used ice packs and heating pads. (Tr. 59). She took medication for hypothyroidism with helped to "keep [it] in check pretty good". (Tr. 75). Plaintiff used a CPAP machine for sleep apnea. (Tr. 75-76). She estimated she got four hours of sleep a night, and did not take naps during the day. (76-77).

Plaintiff stated her neck pain radiated to the rest of her body resulting in numbness and tingling. (Tr. 59-61, 67). She dropped things and at times her left arm felt "broken". (Tr. 61, 63). She could lift a gallon of milk, but that was "pushing it." (Tr. 65-66, 81). She also complained of low back pain (Tr. 60), and left shoulder pain and "constant popping" (Tr. 67). Plaintiff stated walking was easier than standing. (Tr. 81). She estimated she could stand for three minutes before needing to sit down and could only sit down for three minutes at a time as long as she could "shift". (Tr. 81-82). Plaintiff stated she could "walk 15 houses up" before needing to take a break. (Tr. 83).

With regard to gastrointestinal issues, Plaintiff reported urgency, bowel infections, bowel spasms, constipation, diarrhea (Tr. 68), and vomiting for the last 24 years (Tr. 71, 74, 75), but

reported she was still able to work during that time (Tr. 71). She stated her medication helped "at times". (Tr. 74-75).

Plaintiff reported difficulty with reading comprehension (Tr. 50) and writing (Tr. 50-51). She experienced "panic attacks" twice a week (Tr. 79), daily "anxiety attacks" (Tr. 79-80), and recently would "get lost" (Tr. 77-79). She experienced daily "fainting feelings". (Tr. 88). Plaintiff got lost on the way to the hearing even though she was familiar with the area. (Tr. 78). Medication did not alleviate her anxiety (Tr. 80), which had gotten progressively worse over the past four years (Tr. 81).

The ALJ pointed out an apparent discrepancy between the date she stopped working (March 16, 2012) and her alleged onset date of disability (February 22, 2012). (Tr. 52-55). Plaintiff stated she "was hardly working at all" during that period and instead using various forms of leave. (Tr. 54-55).

*Vocational Expert*

The ALJ asked the VE if a hypothetical individual with the following limitations and claimant's vocational profile could work:

> Lift and carry no more than 20 pounds occasionally and 10 pounds frequently; stand and walk for approximately 6 hours in an 8-hour workday; sit for approximately 6 hours in an 8-hour workday; frequently push/pull of hand controls with the bilateral upper extremities; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, and craw; frequently stoop; occasionally reach overhead and handle with the left upper extremity (non-dominant); frequently handle and finger with the right dominant upper extremity; must avoid exposure to all hazards; perform moderately complex tasks with no fast-paced work and not strict production quotas; and limited to frequent interaction with the public, coworkers, and supervisors.

(Tr. 99-102). The VE determined the individual would be able to perform Plaintiff's past work of customer service clerk and accounting clerk. (Tr. 102).

8

The second hypothetical individual had the following limitations: lift and carry 10 pounds at a time; occasionally lift or carry articles like docket files, ledgers, or small tools; stand for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and had all the additional limitations in the first hypothetical. (Tr. 102-03). The VE determined the individual could perform Plaintiff's past work of accounting clerk. (Tr. 103-04).

The third and fourth hypotheticals were as follows:

Q: Okay. And then finally, for my third hypothetical, if we change that limitation, like you've just said, to -- of the -- of the interaction, if we changed that to occasional interaction with the public, coworkers, and supervisors, what would that do? And think about it two ways. Think about it in hypo one at the light reduced light level, and think about it in hypo two at the reduced sedentary level. But for the third hypothetical, if I would change that interaction from frequent to occasional with public, coworkers, and supervisors, would

A: Your honor, neither the job as a customer service clerk or an accounting click -- clerk would fit the third hypothetical, considering the person would be required to perform more than occasional interaction with the public.

Q: Okay, and that makes sense to me. Now, if you think about hypothetical number one at the reduced light level, would there be other jobs that an individual could do under that hypothetical, instead of the past work, with the occasional interaction limitation?

(Tr. 104-05). The VE determined these jobs included marker II, mail clerk, and fruit distributor.

(Tr. 105-06). The ALJ continued:

Q: And now, if you thought about adding that occasional interaction limitation to the second hypothetical, which was the sedentary hypothetical, would there be three examples of jobs?

(Tr. 106). The VE noted the individual could perform the jobs of marker II and fruit distributor at the light exertional level. (Tr. 106-07). He noted the individual could perform the jobs of surveillance system monitor and table worker at the sedentary level under the second hypothetical. (Tr. 107-08).

ALJ Decision

In a written decision dated May 16, 2014, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since February 22, 2012, the alleged onset date.

3. The claimant has the following severe impairments: cervical degenerative disc disease with radiculopathy, status-post C4-C6 fusion surgeries; left shoulder degenerative joint disease; depressive disorder; and anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant retains the residual functional capacity to perform the following range of light work as defined in 20 CFR 404.1567(b): lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently; standing or walking for approximately six hours in an eight-hour workday; sitting for approximately six hours in an eight-hour workday; frequent pushing and pulling of hand controls with the bilateral upper extremities; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs and crawl; frequently stoop; occasional reaching overhead with the non-dominant left upper extremity; occasional handling with the left upper extremity; frequent handling and fingering with the right dominant upper extremity; avoid all exposure to hazards, *i.e.,* dangerous machinery, unprotected heights, commercial driving, etc; limited to moderately complex tasks with no fast-paced work and no strict production quotas; and limited to frequent interaction with the public, coworkers and supervisors.

6. The claimant is capable of performing past relevant work as an accounting clerk and customer service clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 22, 2012 through the date of this decision.

(Tr. 18-37) (internal citations omitted).

10

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for disability benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.    Was claimant engaged in a substantial gainful activity?

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which

11

  substantially limits an individual's ability to perform basic work activities?

3.   Does the severe impairment meet one of the listed impairments?

4.   What is claimant's RFC and can claimant perform past relevant work?

5.   Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ's decision is not supported by substantial evidence for three reasons: (1) his failure to find Plaintiff's gastrointestinal problems to be severe impairments; (2) his determination Plaintiff was less than fully credible; and (3) his inadequate RFC analysis. For the reasons below, these arguments are not well-taken.

### Step Two - Severe Impairments

Plaintiff first alleges the ALJ erred by not including Plaintiff's various gastrointestinal issues—including celiac disease, non-alcoholic fatty liver disease, primary biliary cirrhosis, diverticulitis, and gastroparesis—as severe impairments. She also notes the state agency

reviewer, Dr. Leon Hughes, determined Plaintiff's inflammatory bowel disease to be a severe impairment.

However, as the Commissioner points out, because the ALJ found Plaintiff suffered from other severe impairments, it is immaterial whether he considered Plaintiff's gastrointestinal problems severe. 20 C.F.R. § 416.920(c) (relevant inquiry at step two is whether "you do not have *any*" severe impairments (emphasis added)); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). The regulations do not require the ALJ to designate each impairment as "severe" or "non-severe"; rather, the determination at step two is merely a threshold inquiry. 20 C.F.R. § 404.1520(a)(4)(ii). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 WL 374184, at *5). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider all the limitations caused by the claimant's impairments, severe or not. If an ALJ considers all a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, the ALJ considered Plaintiff's gastrointestinal issues and found them not to be severe. (Tr. 23-24).

> The claimant testified for the past 25 years, she has experienced bowel infections, spasms, and urgency as a result of her celiac disease, non-alcoholic fatty liver disease, primary biliary cirrhosis, and diverticulitis. The claimant also reported that her gastroparesis causes occasional vomiting. Still, she was able to work full-time at substantial gainful levels with these conditions without any evidence of special work-related accommodations. While the claimant had a temporary exacerbation of these conditions requiring multiple surgeries throughout 2012, including a colostomy, the evidence demonstrates that the severity of her

13

impairments did not last at least 12 months, and have not continued to cause work-related limitations that would interfere with her ability to work throughout the entire period since the alleged onset date. Therefore, the undersigned concludes that these impairments are non-severe.

*Id.*

The ALJ did however find other impairments severe—including cervical degenerative disc disease with radiculopathy, status-post C4-C6 fusion surgeries; left shoulder degenerative joint disease; depressive disorder; and anxiety disorder. (Tr. 23). Therefore, the ALJ's threshold inquiry at step two was proper. 20 C.F.R. § 404.1520(a)(4)(ii).

Additionally, the undersigned finds he adequately considered all of claimant's impairments—including her gastrointestinal issues—in determining her limitations. *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 WL 374184, at *5). A claimant's residual functional capacity ("RFC") is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence *Id.* § 416.929. While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927, and 416.945(a)(1).

In the RFC section of his decision, the ALJ noted: "[t]he vast majority of the record relates to the claimant's treatment for her gastrointestinal issues, including her surgeries and follow-up in 2012 and early 2013." (Tr. 28). Throughout the decision he discussed various evidence relating to Plaintiff's gastrointestinal issues. He considered her complaints of bowel incontinence but determined they were not supported by the record and therefore "at least

somewhat exaggerated."[1] *Id.* The ALJ noted on April 20, 2012, she "denied ongoing abdominal discomfort besides crampy incisional pain". (Tr. 28) (citing Tr. 431). During a vascular medicine surgical follow-up appointment on August 14, 2012, she reported "doing well" and denied any abdominal pain. (Tr. 29) (citing Tr. 472). On August 23, 2012, at a visit with her surgeon, David Dietz, M.D., Plaintiff denied having any pain or problems. (Tr. 29) (citing Tr. 478-79). At this time, Plaintiff stated she had no difficulty "performing or completing routine daily living activities". (Tr. 479). The ALJ noted at a pre-surgical appointment on October 29, 2012, she denied having any pain. (Tr. 29) (citing Tr. 525).

He noted that on February 27, 2013, Plaintiff reported she had pain of ten out of ten in her abdomen that had been present for four months (Tr. 29) (citing Tr. 692), but determined "the evidence [did] not indicate that her pain persisted at these levels throughout the relevant period." (Tr. 29). To support this assertion, he cited to reported pain of six out of ten on March 22, 2013 and April 18, 2013, but no difficulty completing her daily activities (Tr. 29) (citing Tr. 719, 723-24).

The ALJ mentioned a pain management appointment of March 23, 2013, for treatment of chronic abdominal pain and opiate withdrawal at the referral of Dr. Dietz. (Tr. 29). He noted she reported pain of a constant four out of ten on a good day and ten out of ten on the worst day. (Tr. 29) (citing 554). The ALJ added: "[s]omewhat inconsistently, she reported that the pain was worse with walking, but mitigated with medications." *Id.*

The ALJ mentioned that while Plaintiff reported "some bowel incontinence in the past, recent treatment notes indicate that she denied difficulty with bowel or bladder control." (Tr. 29); *see* Tr. 554.

---

1. The undersigned discusses the ALJ's credibility assessment in depth below.

The ALJ stated Plaintiff stopped working due to her gastrointestinal illness, but noted: "[p]er her testimony, the claimant's employer went out of business several months after she went on short-term disability for her intestinal problems, suggesting another reason why she has not returned to work besides her allegedly disabling physical conditions." (Tr. 29); *see* Tr. 52.

The ALJ also considered two undated medical source statements from Plaintiff's treating primary care physician, Dr. Carney, indicating Plaintiff had bowel urgency, incontinence, and diarrhea. (Tr. 30-31). However, he noted: "[t]he record demonstrates that the claimant's gastrointestinal symptoms improved with treatment and diet adjustment". (Tr. 31).

Therefore, the undersigned finds the ALJ did not err in finding Plaintiff's gastrointestinal problems not severe, and thoroughly discussed these issues throughout the decision thereby considering them in the RFC determination. The ALJ's RFC determination is supported by substantial evidence. *Nejat*, 359 F. App'x at 577 (citing *Maziarz*, 837 F.2d at 244).

Credibility Assessment

Plaintiff next challenges the ALJ's credibility assessment. When making a credibility finding, the ALJ must make a finding based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1-3. But, an ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

(i) [A claimant's] daily activities;

16

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;

(vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, Plaintiff brings three challenges to the ALJ's determination Plaintiff was not entirely credible: (1) his misplaced reliance on the fact that she was able to care for her elderly father; (2) his determination she could concentrate to drive a car; and (3) a treating physician's opinion supporting Plaintiff's allegations "should serve to bolster [Plaintiff's] credibility." (Doc. 10, at 14-15).

First, the while ALJ did consider evidence that Plaintiff cared for her elderly father, this consideration was not misplaced. Plaintiff's argument, in its entirety, consists of the following:

> The ALJ apparently found it significant that [Plaintiff] cares for her elderly father, as he  mentioned it several times in the decision. However, the bald statement "cares for her father" implies  much more effort than is justified based upon [Plaintiff's] testimony. She testified that, while it is emotionally taxing to care for her father, the actual physical care she provides him is simply medication management, occasional light cleaning, and some simple meal preparation. Therefore,  using "care of her father" as evidence that [Plaintiff's] testimony as to her limitations is less than  fully credible is simply not justified by the record.

(Doc. 10, at 14).

However, it is appropriate for an ALJ to consider a plaintiff's daily activities and other factors concerning her functional limitations and restrictions in his credibility determination. 20 C.F.R. § 416.929(c)(3). First, contrary to Plaintiff's assertion, the ALJ appropriately considered the fact that Plaintiff cared for her elderly father daily. (Tr. 24, 27, 28, 30). He noted: "The [Plaintiff] lives independently and cares for her elderly father with health problems. She tended to minimize the extent of this activity during her testimony, but she previously reported to the consultative psychologist that she cooks and cleans for him." (Tr. 24). Indeed, Plaintiff testified four years prior to the hearing, she moved in with her elderly "disabled" father to care for him. (Tr. 47). It was a two-story home and she estimated she climbed the stairs ten to twelve times a day to go to the bathroom, but reported difficulty doing so. (Tr. 47-48). Without being asked she stated "[t]here's no lifting or anything like that involved." (Tr. 47). Plaintiff indicated caring for her father involved washing dishes, preparing simple meals, occasional cleaning (dusting, mopping, sweeping, and vacuuming). (Tr. 84). She also performed other daily household tasks including laundry, light yardwork, and grocery shopping. (Tr. 84-85).

Second, Plaintiff alleges the ALJ incorrectly stated Plaintiff drove herself to the hearing when she instead took public transportation and that despite familiarity with the area, found

18

herself lost between the train station and the hearing office. (Doc. 10, at 15). Plaintiff did in fact

testify she took public transportation to the hearing (Tr. 50), but that error is harmless because

she admittedly drives regularly—twice a week on average (Tr. 49-50). The ALJ therefore

properly considered her ability to drive (an activity of daily living) in his credibility

determination. (Tr. 30). 20 C.F.R. § 416.929(c)(3).

Third, Plaintiff alleges the opinion of treating physician Dr. Carney "support[s]

[Plaintiff's] allegations regarding her symptoms and their effect on her functioning should serve

to bolster [Plaintiff's] credibility."[2] (Doc. 10, at 15). Plaintiff argues Dr. Carney determined her

limitations were caused by gastrointestinal problems and created "pain and discomfort, as well as

---

2. It is important to note Plaintiff only references the treating physician opinion with regard to the ALJ's credibility determination.

> Further, Dr. Carney, [Plaintiff's] longtime treating physician, supported the level of limitation alleged by [Plaintiff], and cited medical reasons for such limitations. The limitations, according to Dr. Carney, were based in no small part of [Plaintiff's] gastrointestinal problems. (T. 354-355; 379-380). These problems caused pain and discomfort, as well as urgency and the need for very frequent and unplanned bathroom breaks.

> While the ALJ gave only limited weight to the opinions of Dr. Carney, finding them "non-specific", this doctor was clearly in the best position to fully understand [Plaintiff's] limitations. She had been the primary treating physician for at least seven years. The fact that her findings support [Plaintiff's] allegations regarding her symptoms and their effect on her functioning should serve to bolster [Plaintiff's] credibility.

(Doc. 10, at 15).

Plaintiff has waived argument on issues not raised in her opening brief. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief are waived). Moreover, Plaintiff waives underdeveloped arguments. *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation omitted).

urgency and the need for very frequent and unplanned bathroom breaks". (Doc. 10, at 15). Dr. Carney did in fact state Plaintiff would be limited in her ability to work due to her gastrointestinal issues. (Tr. 380). However, the ultimate RFC determination is left to the ALJ, and for the reasons stated herein, the undersigned finds that determination supported by substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as [a claimant's RFC] . . . the final responsibility for deciding these issues is reserved to the commissioner").

Seeing no error in Plaintiff's challenges to the ALJ's credibility determination, the undersigned therefore gives it great weight. *Cruse*, 502 F.3d at 542. The Court finds the "ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

Hypothetical Question

Lastly, Plaintiff argues the hypothetical question posed to the VE was based on the RFC determined by the state agency reviewer and failed to include any limitations based on Plaintiff's gastrointestinal problems. (Doc. 10, at 16). The undersigned agrees with the Commissioner that this final argument is "essentially a restatement of her earlier arguments." (Doc. 13, at 15).[3]

If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and

_____

3. Additionally, Plaintiff states she is challenging the RFC (*see* Doc. 10 at 16), but offers no explicit argument in that regard. However, the undersigned evaluates RFC in relation to Plaintiff's severe impairments challenge (even though Plaintiff did not directly challenge it there either) above and finds it supported by substantial evidence.

20

cannot do"). The ALJ is only required to include in his hypothetical those limitations he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

The ALJ was only required to include in his hypothetical limitations he found credible, *Casey*, 987 F.2d at 1235, and the undersigned has already found no error in his credibility and RFC assessments. Additionally, the undersigned finds substantial evidence supports the hypothetical question the ALJ posed to the VE. The ALJ therefore did not err in finding Plaintiff capable of performing her past work of accounting clerk, customer service clerk, and floral designer. (Tr. 32).

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the ALJ's decision supported by substantial evidence, and recommends the Court affirm the Commissioner's decision denying benefits.

 s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).